IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JERRY WAYNE DAY,

     Plaintiff,

v.                                No. 13-1089

FINISHING BRANDS HOLDINGS, INC.,

     Defendant.

_____

ORDER GRANTING IN PART AND DENYING IN PART THE MOTIONS FOR
RECONSIDERATION
_____

Before the Court are the motions of the Plaintiff, Jerry Wayne Day, and the Defendant,

Finishing Brand Holdings, Inc. ("FB"), requesting reconsideration of portions of the Court's

May 14, 2015 order granting in part and denying in part FB's motion for summary judgment.

(Docket Entries ("D.E.") 114 and 115.)  For the reasons discussed below, the motions are

GRANTED IN PART and DENIED IN PART.

## I.      Legal Standard

While neither party identifies the procedural basis for their motions, the Court will

construe them as being brought pursuant to Rule 54(b) of the Federal Rules of Civil Procedure,

and Rule 7.3 of the Local Rules for the United States District Court for the Western District of

Tennessee ("Local Rules").  Rule 54 provides that

> any order or other decision, however designated, that adjudicates fewer than all
> the claims or the rights and liabilities of fewer than all the parties does not end the
> action as to any of the claims or parties and may be revised at any time before the
> entry of a judgment adjudicating all the claims and all the parties' rights and
> liabilities.

Fed. R. Civ. P. 54(b). District courts also have an inherent power to reconsider, rescind, or modify an interlocutory order before entry of a final judgment. *See Leelanau Wine Cellars Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 945 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). However, motions "'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)).

"[R]econsideration of an interlocutory order is only appropriate when one of the following has occurred: (1) an intervening change in the law; (2) the discovery of new evidence; or (3) the need to correct clear error or correct manifest injustice." *Bailey v. Real Time Staffing Servs., Inc.*, 927 F. Supp. 2d 490, 501 (W.D. Tenn. 2012) (citing *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, No. 09-2127, 2010 WL 3925261, at *2 (W.D. Tenn. Sept. 29, 2010)). "When the parties simply 'view[ ] the law in a light contrary to that of [the court], the 'proper recourse' is not to file a motion to reconsider but rather to file an appeal." *Id.* at 501–02 (citing *Dana Corp. v. United States*, 764 F. Supp. 482, 489 (N.D. Ohio 1991)).

Motions for revision or reconsideration of interlocutory orders are also governed by Local Rule 7.3, which states:

(a)  Application to Non-Final Orders. Before the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may move, pursuant to Fed. R. Civ. P. 54(b), for the revision of any interlocutory order made by that Court on any ground set forth in subsection (b) of this rule. Motions to reconsider interlocutory orders are not otherwise permitted.

(b)   Form and Content of Motion to Revise. A motion for revision must specifically show:

> (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or
>
> (2) the occurrence of new material facts or a change of law occurring after the time of such order; or
>
> (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.
>
> (c)    Prohibition Against Repetition of Argument. No motion for revision may repeat any oral or written argument made by the movant in support of or in opposition to the interlocutory order that the party seeks to have revised. Any party or counsel who violates this restriction shall be subject to appropriate sanctions, including, but not limited to, striking the filing.

Local Rule 7.3.  As neither motion presents new evidence, new material facts, or a change in law, they must be based on the contention that there was a manifest failure by the Court in considering material facts or dispositive legal arguments presented to it before ruling on Defendant's motion for summary judgment.

## II.    Analysis

*A.    Plaintiff's Motion for Reconsideration*

The Title VII and THRA retaliation claims related to Day's termination were dismissed because he failed to show that his exercise of protected activities were but-for causes of his August 13, 2012 dismissal.  (D.E. 110 at 49–50.)  He first maintains that the Court erred by failing to consider the temporal proximity of the June 28, 2012 and July 6, 2012 complaints to his August 13, 2012 discharge because the company had opened an investigation into his role in causing the 2012 budget overrun.  (D.E. 114-1 at 4–7.)  Alternatively, he insists the Court mistakenly dismissed the retaliation claims without considering the additional evidence of

retaliatory conduct, that, when coupled with the temporal proximity of his numerous complaints, sufficiently demonstrated but-for causation. (*Id.* at 1–4.)

Day contends that the Court's refusal to consider the temporal proximity of his June 28 and July 6, 2012 complaints to his August 13, 2012 termination was contrary to the Supreme Court's holding in *University of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013), and the Sixth Circuit's decision in *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497 (6th Cir. 2014), because the investigation was a sham.[1]  (*Id.* at 4–7.)  Day's argument focuses on an excerpt from *Nassar*, which references a situation where "an employee . . . knows that he or she is about to be fired for poor performance . . . .  To forestall that lawful action, he or she might be tempted to make an unfounded charge of racial, sexual, or religious discrimination; then, when the unrelated employment action comes, the employee could allege that it is retaliation," 133 S. Ct. at 2532, and *Montell*, which held that if an employer's previously contemplated action does not fit with how the termination actually occurred, then consideration of the temporal proximity of complaints submitted after an investigation has begun is not forbidden.  757 F.3d at 507.[2]

---

[1] Day also cites *Thompson v. Quorum Health Res., LLC*, 485 F. App'x 783 (6th Cir. 2012) for the position that an employer's sham investigation can serve as evidence of a retaliatory motive. (D.E. 114-1 at 5–7.)  This case was not cited in Day's briefs, and he has not explained why he was unable to reference it until now.  The issue in *Thompson* was whether there was sufficient evidence for the jury to conclude that the plaintiff was fired in retaliation for filing a *qui tam* complaint against the defendant. 485 F. App'x at 793.  The plaintiff in *Thompson* put forth evidence that the defendant did not have all of the information it needed to conduct a sufficient investigation before it decided to suspend and terminate him.  *Id.* at 792–93.  The court also concluded that the close proximity between the plaintiff's protected activity and the adverse employment action (one month) supported the jury's inference of a retaliatory motive.  *Id.*  By contrast, the Court, in its May 14, 2015 order, concluded that because the company's 2012 temporary labor costs greatly exceeded the projections, an investigation was warranted. (D.E. 110 at 49.)  Further, the protected activities undertaken by the plaintiff in *Thompson* all occurred before the company began its investigation into his code of conduct violations, 485 F. App'x at 792–93, while in this case, the Plaintiff submitted two additional complaints after the investigation into the budget overrun had already begun.

[2] The holdings of both cases can be traced back to the Supreme Court's directive in *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001), that "[e]mployers need not suspend previously planned [actions] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."  *Id.* at 272.

Based on these cases, Day insists it would be manifestly unjust to allow the company's investigation to serve as a shield preventing the Court's consideration of the June 28 and July 6, 2012 complaints in determining whether he has established but-for causation through temporal proximity. (D.E. 114-1 at 6–7.) However, the Court rejected Day's argument that the investigation into the budget overrun was an illegal retaliatory action, and found that it would not consider the temporal proximity of the June and July 2012 complaints to his termination. (*See* D.E. 110 at 46–50.)

Further, even though the Court concluded that there still remained a factual dispute as to whether his supervisors had an honest belief in terminating Day as it related to his race discrimination claim, this analysis is distinct from determining whether he established the causation element of the retaliation claim arising from his termination. *See Harden v. AlliedBarton Sec. Serv.*, No. 3:10-00779, 2013 WL 2467714, at *4–8 (M.D. Tenn. June 7, 2013) (dismissing the plaintiff's retaliation claim arising from his termination because he failed to establish causation, while denying the defendant's motion for summary judgment as to the plaintiff's termination claim based on race discrimination because factual issues still remained concerning whether the defendant's proffered reasons were pretextual). As Day seeks to relitigate issues already decided by this Court, his motion for reconsideration on this ground is DENIED.

Plaintiff also maintains that the Court failed to consider the additional evidence offered to buttress his causation showing. (D.E. 114-1 at 1–4.) He cites several Sixth Circuit cases which hold that certain types of employer conduct may be used to support an inference of causation for the purposes of setting forth a prima facie retaliation claim. (*Id.* at 1–2.) These cases were not cited in either the response or sur-reply. Regardless, the Court considered this additional

evidence and concluded that "[p]laintiff has not put forth any other evidence demonstrating a causal connection between his protected activities and his termination" aside from the temporal proximity of the April 24, 2012 complaint to his August 13, 2012 termination. (D.E. 110 at 49.)

Day's attempt to connect protected activity occurring in July 2011, November 2011, and April 2012 to his August 13, 2012 termination was rejected by the Court. Specifically, in considering the allegations contained in the July 13 and 18, 2011 complaints, the Court found that Day's hostile work environment claim failed as a matter of law, (*Id.* at 38–42), and because he admitted to accessing co-workers' emails without prior authorization, the company's decision to issue a first written warning was also not proof of retaliatory conduct on the part of the Defendant. (*Id.* at 24–27.) The Court considered the allegations in the November 11, 2011 complaint and found that because Mitch Hall was not an appropriate comparator, Day's job title and pay disparity claims lacked merit. (*Id.* at 13–22.) The Court further held that the company's issuance of a final written warning after Day accessed a supervisor's work computer, without prior authorization, was not retaliatory conduct. (*Id.* at 24–27.) Finally, the Court considered the April 24, 2012 complaint and found that, besides being too far removed from his August 2012 termination to support an inference of causation based on temporal proximity, (*id.* at 49), the allegations were not proof of a hostile work environment. (*Id.* at 38–42.)

Finally, Day now insists that the discriminatory atmosphere evidence he submitted as "probative evidence of pretext," can also be used to "bolster the causation prong of a retaliation claim." (D.E. 114-1 at 3.) He relies on *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009), for the proposition that all types of discriminatory atmosphere evidence can be probative evidence of pretext, and on *Philbrick v. Holder*, 583 F. App'x 478, 490 (6th Cir.

2014)[3], which held that courts may consider pretext evidence in determining if a plaintiff has established the causation element of a retaliation claim. (D.E. 114-1 at 3.) In its May 14, 2015 order, the Court reserved ruling on the relevancy of Plaintiff's discriminatory atmosphere evidence as to pretext because there still remained factual issues as to whether the company's management had an honest belief in the reasons underlying his termination, making consideration of that issue unnecessary. (D.E. 110 at 37 n.9.) However, to the extent Plaintiff now contends this evidence also establishes the causation element of the retaliation claim arising from his termination, the Court will GRANT his motion and consider this evidence.

Rule 56 provides in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court is to "view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party." *Burns v. Mahle Engine Components USA, Inc.*, ___ F. App'x ____, No. 13-2324, 2015 WL 1427147, at *3 (6th Cir. Mar. 31, 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). It is not to "weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014) (quoting *Anderson*, 477 U.S. at 251–52).

The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520

---

[3] This case was not cited in either of Day's briefs.

(6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the motion is properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citation omitted). The nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson*, 477 U.S. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.* A court must grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

To establish a prima facie retaliation claim using circumstantial evidence, as in this case, a plaintiff is required to show that "(1) he engaged in protected activity, (2) the [defendant] knew that [the plaintiff] had exercised his civil rights, (3) the [defendant] took an adverse employment action against [the plaintiff], and (4) there was a causal connection between [the plaintiff's] protected activity and the adverse employment action." *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 627–28 (6th Cir. 2013) (citing *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)). The burden of establishing a prima facie case of retaliation is "minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)).

If Day makes out a prima facie case, the burden shifts to FB to "produce a legitimate, non-retaliatory reason for its action." *Montell*, 757 F.3d at 504 (citation omitted). If FB

produces such a reason, "the burden shifts back to [Day] to put forward competent evidence from which a reasonable jury could conclude that the stated reason is merely pretextual." *Id.* (citation omitted). "Ultimately, [Day] will have to 'establish that . . . [his] protected activity was a but-for cause of the alleged adverse action by the employer.'" *Id.* (quoting *Nassar*, 133 S. Ct. at 2534).

Day offers the allegations of several current and former FB employees, statistical data, and other incidents as examples of the discriminatory atmosphere at Defendant's Jackson, Tennessee facility. He insists that this probative evidence of discrimination is also sufficient to establish the causation element of his retaliation claim. In evaluating discriminatory atmosphere evidence, the Sixth Circuit has explained:

> Circumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.

*Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 665 (6th Cir. 2013) (quoting *Risch,* 581 F.3d at 392). A defendant's "discriminatory comments can qualify as evidence that a particular decision was discriminatory if the speaker was 'in a position to influence the alleged decision.'" *Griffin v. Finkbeiner*, 689 F.3d 584, 595 (6th Cir. 2012) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998)). Racially insensitive statements can be "sufficient evidence of racial animus only if they [had] some connection to the decision to terminate [the plaintiff]." *Id.* These statements could be direct or circumstantial evidence of discrimination. *Id.* An example of direct evidence would be a defendant uttering racially insensitive statements that mentioned a plaintiff by name; while circumstantial evidence would require the court to consider "the identity of the speaker, the nature and substance of the

comments, and the temporal proximity of the comments to the challenged decision." *Id.* (citation omitted). The *Griffin* court noted that "[i]n certain circumstances, even statements by a non-decisionmaker can be probative evidence of discrimination, such as when the speaker holds a management position, the statements are commonplace or made in a relevant context (such as a meeting in which personnel decisions are made), or where other evidence of animus exists." *Id.* at 596 (citing *Risch*, 581 F.3d at 393). However, "[e]ven if made by a relevant speaker, '[i]solated and ambiguous' comments will not support a finding of discrimination." *Id.* (quoting *Ercegovich*, 154 F.3d at 355). While the *Griffin* court dealt only with discriminatory statements made by a party, subsequent decisions from this Circuit have expanded the scope of what qualifies as relevant evidence of a discriminatory atmosphere sufficient to establish pretext, or in this case, causation.

In *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652 (6th Cir. 2013), the Sixth Circuit, in reversing the district court's grant of summary judgment in favor of the defendant employer on the plaintiff's race discrimination claim, held that affidavits from the plaintiff's co-workers were sufficient to establish pretext because they provided evidence of a discriminatory atmosphere. *Id.* at 655, 669. The plaintiff in *Rachells* was terminated during a reduction in force conducted by the defendant. *Id.* at 657–58. Plaintiff alleged that during his employment with Cingular, there was "a general atmosphere of hostility toward African-Americans" that came directly from the manager of the plaintiff's division. *Id.* at 658. To satisfy his burden of showing that the defendant's proffered termination reason was pretextual, the plaintiff offered affidavits from two former co-workers. *Id.* at 669. The affidavits stated that the division manager promoted a Caucasian employee over more qualified minority candidates, that the promoted Caucasian employee gave lower evaluation scores to minority employees, and

the division manager was unresponsive to minority employees' complaints about those discriminatory practices. *Id.* The manager discussed in the co-workers' affidavits was the same one who made the ultimate decision to terminate the plaintiff. *Id.* at 657.

The *Rachells* court held that the incidents were "probative of pretext 'because [they] cast doubt on the basis in fact of Defendant's proffered legitimate, non-discriminatory reasons.'" *Id.* at 669 (quoting *Bartlett v. Gates*, 421 F. App'x 485, 492 (6th Cir. 2010)). The *Rachells* court held that district courts, in determining "whether discriminatory atmosphere evidence is probative of discrimination in a particular case," should consider "'the [actor]'s position in the [employer's] hierarchy, the purpose and content of the [conduct], and the temporal connection between the [conduct] and the challenged employment action, as well as whether the [conduct] buttresses other evidence of pretext." *Id.* at 665 (quoting *Risch*, 581 F.3d at 392). The court cautioned that "'evidence of a . . . discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment.'" *Id.* (quoting *Risch*, 581 F.3d at 393).

As for "other acts" evidence, in reviewing the district court's exclusion of testimony from non-party employees regarding their own experiences dealing with retaliation by the defendant, the *Griffin* court held that "[i]n the employment-discrimination-law context, 'other acts' evidence consists of testimony or other evidence of discrimination by the employer against non-party employees." 689 F.3d at 598. Expanding on the Supreme Court's holding in *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 380–81, 387 (2008), that lower courts should not apply a per se rule "excluding 'other acts' testimony from non-parties alleging discrimination by supervisors who did not play a role in the challenged decision," the *Griffin* court instructed district courts to consider the "temporal and geographic proximity, whether the various

11

decisionmakers knew of the other decisions, whether the employees were similarly situated in relevant respects, or the nature of each employee's allegations" in deciding whether to admit "other acts" evidence. *Id.* at 598–99. Deciding the relevance of "other acts" evidence is "a case-by-case determination that 'depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.'" *Id.* at 598 (quoting *Mendelsohn*, 552 U.S. at 388.)

In a recent unpublished decision, the Sixth Circuit expanded on the factors laid out in *Griffin* and directed district courts analyzing the relevance of "other acts" evidence in the employment discrimination context to consider: "(1) whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff; (2) whether the same 'bad actors' were involved in the 'other' conduct and in the challenged conduct; (3) whether the other acts and the challenged conduct were in close temporal and geographic proximity; (4) whether decision makers within the organization knew of the decisions of others; (5) whether the other affected employees and the plaintiff were similarly situated; and (6) the nature of the employees' allegations." *Schrack v. R+L Carriers, Inc.*, 565 F. App'x 441, 445 (6th Cir. 2014) (citing *Griffin*, 689 F.3d at 599); *Baskin v. Pepsi MidAmerica Co.*, No. 5:13-CV-00030-TBR, 2015 WL 420210, at *5 (W.D. Ky. Jan. 30, 2015) (characterizing testimony from plaintiff's co-worker describing defendant-employer's discriminatory atmosphere as "other acts" evidence whose relevance must be analyzed pursuant to the factors set forth in *Griffin's* discussion of "other acts" evidence).

After reviewing cases both before and after *Griffin v. Finkbeiner*, the Court finds that Plaintiff has offered evidence that is properly characterized and analyzed as discriminatory atmosphere evidence, and evidence that is properly characterized and analyzed as "other acts"

evidence. *Compare Griffin*, 689 F.3d at 595–96 *with* 598–600. Day's evidence concerning actions taken by or involving Battle, Schultz, or Kurtz, or actions taken by a non-decisionmaker who could have influenced the decision to terminate his employment, will be analyzed as discriminatory atmosphere evidence. *See Rachells*, 732 F.3d at 669 (holding that the evidence of discriminatory atmosphere involving the division manager was "probative of individualized discrimination in the case of [plaintiff's] termination, because it 'add[s] "color" to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.'") (quoting *Risch*, 581 F.3d at 392). Plaintiff's evidence "consist[ing] of testimony or other evidence of discrimination by the employer against non-party employees," *Griffin*, 689 F.3d at 598, will be analyzed as "other acts" evidence under the factors set forth in *Schrack v. R+L Carriers, Inc.*.

As noted, the Court rejected Day's insistence that Bob Battle's statements to him and other employees was evidence of a hostile work environment. (D.E. 110 at 38–42.) After Day's July 18, 2011 complaint, the company enrolled Battle in sensitivity training. Day contends that Battle's failure to keep up with a journal assignment from that training is evidence of a discriminatory atmosphere. Even though Battle recommended that Day be terminated, this one isolated incident occurred nearly eight months before Day's August 13, 2012 termination, and, to the HR Manager's knowledge, Battle completed the program. (Dep. of Betty Schultz at 9, D.E. 75-11.) Battle's failure to keep up with a journal assignment does not add "color" to the decisionmaking process to terminate Day's employment.

Plaintiff avers that the company sanctioned a discriminatory atmosphere in the workplace because sometime in 2012, he and other FB employees saw a rubber chicken hung from a noose in the window of an unfinished office addition. The chicken remained in the window for more

13

than a day, but was taken down soon after by Day, and was never seen again. This evidence is isolated and far removed from the decision to terminate Day. This incident was never connected to anyone who made, or influenced, the decision to terminate Day's employment, and is not evidence of a discriminatory atmosphere.

Day also relies on an incident involving Louis Artis, an assembler in the Jackson, Tennessee facility, and Danny Selph, another FB employee. As background, sometime in 2012, Selph gave Artis books written by Bill Cosby and Wellington Boone that he found while cleaning his shed. Selph thought it would be a nice gesture to give the books to Artis instead of throwing them away. Artis viewed this interaction differently, testifying that upon receiving these books he was offended and began to cry because he believed the subject of the books focused on diminishing who African Americans are culturally. The Court rejected Artis's contention that this incident was racially motivated. Further, Selph played no part in the decision to terminate Day's employment. This "other acts" evidence does not support the conclusion that there was a discriminatory atmosphere.

Next, Plaintiff insists that KKK writing in the men's restroom is evidence of a discriminatory atmosphere. Sometime in 2009, Artis saw a drawing of a Ku Klux Klansman and an African-American man kissing, with the caption "What has the South come to?" in the men's restroom at work. Once the offensive cartoon was reported, it was removed and not seen again. Day has not explained how this incident impacted management's decision to terminate his employment in 2012. He failed to demonstrate that the individuals involved in the decision to terminate his employment were also responsible for placing this drawing in the men's restroom. This "other acts" evidence does not support the conclusion that there was a discriminatory atmosphere.

Day also relies on Artis's discrimination, hostile work environment, and retaliation claims that were before this Court as evidence of a discriminatory atmosphere. However, the Court rejected these claims and dismissed the lawsuit. *See Artis v. Finishing Brands Holdings, Inc.*, No. 13-1090, 2015 WL 1268027 (W.D. Tenn. Mar. 19, 2015). These claims cannot now support Day's contention that there was a discriminatory atmosphere at the company's Jackson, Tennessee facility.

He also relies on Dawn Partee's November 5, 2013 EEOC charge as "other acts" evidence of a discriminatory atmosphere. In her charge, Partee claims she was subjected to race discrimination, retaliation and a hostile work environment from January 1, 2011 through September 17, 2013 while employed at FB based on her superiors' heightened scrutiny of her actions as compared to Caucasian employees. She recalls a November 2012 incident where she left the facility to move her vehicle and was followed by an unnamed supervisor who asked what she was doing. Partee claims she applied for a Distribution Associate position in March 2013, but was told it was no longer available. She contends that her race was the reason the posting was removed. Partee states that on May 13, 2013 she was wrongly accused of shipping an incorrect part and received a reduction of $1.00 per hour in pay. Partee also claims that, after May 24, 2013, Kurtz changed her job description without putting the changes in writing, which made it impossible for her to do the job properly. Finally, she alleges that after May 24, 2013, Kurtz began not including her on informational meetings in which similarly situated Caucasian employees attended. The Court finds that Partee's EEOC charge is too attenuated to support Plaintiff's contention that he was terminated in retaliation for filing complaints. Partee's allegations have no logical connection to the company's decision to terminate Day. While her allegations reference Kurtz, almost all of her claims involving Kurtz arise after Day had already

been terminated. Day and Partee are not similarly situated, since she was a temporary employee who worked in Defendant's warehouse, while Day worked in the office. Her charge is not "other acts" evidence of a discriminatory atmosphere.

Day next presents Edna Terry's October 16, 2014 EEOC charge as "other acts" evidence of a discriminatory atmosphere. Terry claims she was subjected to race, sex, and age discrimination, retaliation and violations of the Lilly Ledbetter Act from January 1, 2012 through the present while employed at FB. Terry insists she was promised a pay raise when she took a position in FB's warehouse but never received it. She claims that after Day was terminated, she received verbal and written warnings at a higher rate than similarly situated Caucasian employees. Terry recalls applying for a Warehouse/Distribution Production Supervisor position that was later removed because the Defendant had a policy of removing open positions once African American employees showed interest. She states that a Caucasian male was awarded the Production Supervisor position in March 2013, and that she was required to train him. Terry further claims that she is subjected to greater workplace scrutiny as compared to Caucasian employees, and that she has been exposed to an ongoing pattern of discrimination while at FB. Terry contends that she is paid less than a similarly situated Caucasian employee in violation of the Lily Ledbetter Act. Terry's allegations have no logical connection to whether Day's complaints were a but-for cause of his termination. While her allegations do mention Kurtz and Schultz, most of them arise after Day had already been terminated. She and Day are not similarly situated, as she is currently employed as a Cell Leader in Defendant's warehouse, while Day worked in the office. Finally, their claims are not similar, as Terry alleges claims based on gender and age discrimination in addition to race discrimination. Terry's charge is not "other acts" evidence of a discriminatory atmosphere.

Finally, Plaintiff offers former employee Steven Smith's July 1, 2013 EEOC charge as "other acts" evidence of a discriminatory atmosphere. Smith claims he was subjected to race and disability discrimination and retaliation while employed at FB from January 1, 2012 through May 14, 2013. During 2012, Smith's son began experiencing behavioral problems which required him to take leave from work. He insists that, while he never exceeded his accrued leave time, he was subjected to negative treatment by his supervisors for taking leave while Caucasian employees did not receive the same treatment. Smith states that his supervisor subjected him to a hostile work environment. He alleges that an unnamed employee said "[Smith] won't make it back here." Smith also contends that a co-worker referred to him as "sorry" and that his workload was increased beyond that of similarly situated Caucasian employees. He related several incidents where his supervisor was unfair to him as compared to Caucasian employees. After being demoted, his employment was terminated on May 14, 2013. His claims have no logical connection to whether Day was terminated because of his complaints. While he mentions Kurtz once, that incident is not indicative of a discriminatory atmosphere. Many of Smith's allegations also occurred after Day had been terminated. He and Day are not similarly situated, as he worked on the warehouse floor as an assembler, while Day worked in the office. Finally, their claims are not similar, as Smith alleges claims based on disability discrimination in addition to race discrimination. Smith's charge is not "other acts" evidence of a discriminatory atmosphere.

Day also highlights the lack of African American supervisors or managers at Defendant's Jackson, Tennessee facility as evidence of a discriminatory atmosphere. Day has not provided any statistical evidence as to how many minorities are qualified to apply for management positions, or how many management positions have been available at the facility. *See Smith v.*

17

*Leggett Wire Co.*, 220 F.3d 752, 761–62 (6th Cir. 2000) (finding as inadmissible evidence related to the percentage of minority supervisors at the defendant's facilities because the plaintiff did not establish the number of qualified minorities available in each labor market).

Plaintiff further claims that African American employees are disciplined at a rate of 8:1 as compared to Caucasian employees, and that this suggests a discriminatory atmosphere. This anecdote is insufficient to demonstrate a discriminatory atmosphere, as "data relied on to support an inference of discrimination must be from a reliable source and must be of sound methodology." *Anderson v. Otis Elevator Co.*, 923 F. Supp. 2d 1032, 1061 (E.D. Mich. 2013) (citing *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990)). Day's contention is neither, since he did not review every personnel file before reaching his conclusion. (Day Dep. at 686–90.) Day simply states that during his employment with Defendant, he recalled eight African American employees receiving disciplinary write-ups as compared to one Caucasian employee. (*Id.* at 690–91.) Because the statistical information lacks a sound methodology or reliable source, it is not evidence of a discriminatory atmosphere.

The evidence offered by Day under the umbrella of "discriminatory atmosphere" does not support his contention that his exercise of protected activities was a but-for cause of his termination. These incidents are, in some cases, too far removed in time and, in others, irrelevant to the issue of whether the Defendant terminated him in retaliation for filing complaints. After considering all of this evidence, the Court AFFIRMS the grant of summary judgment in favor of FB on this claim.[4]

---

[4] This decision in no way affects the Court's consideration of whether any of this evidence would be admissible as evidence of a discriminatory atmosphere or "other acts" evidence as it may relate to the Plaintiff's remaining race discrimination claim arising from his termination.

Finally, Day moves for reconsideration of the dismissal of the TPPA and Tennessee common law retaliatory discharge claims on the same bases as above. (D.E. 114-1 at 1.) However, to show causation under the TPPA, a plaintiff must put forth evidence that "his whistleblowing behavior was the *sole* reason for his termination," *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002), and for a common law retaliatory discharge claim, must show that his whistleblowing behavior was a substantial factor in the employer's decision to terminate, which means that it was "an important or significant motivating factor for the discharge." *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 800 (Tenn. 2010) (internal quotation marks omitted) (citation omitted).

Plaintiff stated in his responsive brief that, "given the temporal proximity between [his] complaints and the retaliatory actions taken against him (*see* Retaliation Section, *supra*)," the Court should deny Defendant's motion for summary judgment because "a reasonable jury could conclude that Day's termination was exclusively or substantially caused by his formal and informal complaints." (D.E. 75 at 32.) However, temporal proximity is insufficient, on its own, to establish a prima facie case under either cause of action. *See Mason v. Seaton*, 942 S.W.2d 470, 473 (Tenn. 1997). Further, the Court concluded that none of Plaintiff's evidence of retaliatory conduct established that his termination was caused solely or substantially by his whistleblowing activities. (D.E. 110 at 53.) Therefore, his request for reconsideration is DENIED.

B.      *Defendant's Motion for Reconsideration*

FB seeks reconsideration of the Court's decision to deny summary judgment on Plaintiff's retaliation claim arising from the July 18, 2011 complaint. (D.E. 115.) The Court construed Plaintiff's complaint as alleging two retaliation claims, but did not address the

retaliation claim arising from the July 18, 2011 complaint because FB's briefs focused exclusively on the retaliation claim arising from Plaintiff's August 2012 termination. (D.E. 110 at 43–46.)

Defendant insists that it sufficiently moved for summary judgment on this claim when it stated in its brief that "Day was terminated for lawful and legitimate reasons, irrespective of his EEOC charge or prior internal complaints to Finishing Brands and Day has not offered any evidence of pretext." (D.E. 71-1 at 26–27.) Defendant maintains that it also addressed the July 18, 2011 retaliation claim in its reply, and in an affidavit submitted by Betty Schultz. (D.E. 115-1 at 2.) Finally, as the evidence supporting the July 2011 retaliation claim was rejected by the Court when it dismissed Plaintiff's discrimination claim, that same result is warranted for his retaliation claim. (*Id.*)

The Court stated in its May 14, 2015 order that summary judgment is appropriate only if the moving party shows that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. (D.E. 110 at 46, citing *Celotex*, 477 U.S. at 322.). As the moving party, FB had the burden of demonstrating that Plaintiff would be unable to come forth with evidence establishing a prima facie retaliation claim based on the July 18, 2011 complaint.

In its opening brief, FB stated that "[f]or purposes of this motion only, Finishing Brands concedes that Day engaged in protected activity and that termination constitutes an adverse employment action." (D.E. 71-1 at 24.) The company averred that "Day [could] not establish a prima facie case of retaliation, however, because he [could not] demonstrate a causal relationship between his protected activity and his termination." (*Id.* at 24–25.) The rest of the briefing focused on whether Day could establish causation based on temporal proximity because the

company was actively investigating his role in the budget overrun, or whether their reasons for terminating him were pretextual. (*Id.* at 25–28.) In its reply, FB again conceded that Day had engaged in protected activity by filing complaints and that his termination was an adverse employment action. (D.E. 89 at 19.) However, Defendant contended that Plaintiff could not establish that his protected activities were but-for causes of his termination, and ignored the other retaliation claims raised in the complaint. (*Id.* at 19–20.)

Finally, the paragraphs of Schultz's affidavit cited by Defendant address only whether Day's status under the Fair Labor Standards Act was changed from "exempt" to "non-exempt" following the July 2011 complaint. (D.E. 90-3 ¶¶ 3–5.) However, Plaintiff claimed that after filing the July 2011 complaint, his supervisors "denied [his] request for things that were necessary for his job." (D.E. 1 ¶ 25.) "[B]ecause the threshold for establishing that an action is materially adverse is substantially less onerous in the retaliation context," *Mys v. Mich. Dep't of State Police*, 590 F. App'x 471, 480 (6th Cir. 2014) (internal quotation marks omitted) (citation omitted), and because FB failed to address Plaintiff's retaliation claim in any meaningful sense, its motion for reconsideration is DENIED.

### III.    Conclusion

The parties have failed to demonstrate that there was a manifest failure by the Court to consider material facts or dispositive legal arguments.

IT IS SO ORDERED this 17th day of July, 2015.

s/ J. DANIEL BREEN                            
CHIEF UNITED STATES DISTRICT JUDGE